IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| v. | ) | Case No. 1:15cr53-001 |
| ABDUR RAHMAN ROLAND, | ) | |
| Defendant. | ) | Hon. Leonie M. Brinkema |

**DEFENDANT'S POSITION ON SENTENCING FACTORS**

Pursuant to Rule 32 of the Federal Rules of Criminal Procedure, Section 6A1.3 of the United States Sentencing Guidelines ("Guidelines"), and this Court's Policy Regarding Procedures to be followed in Guideline Sentencing, the Defendant, Abdur Rahman Roland, through counsel, states he has received and reviewed the Pre-Sentence Investigation Report ("PSR") prepared in this case.

On February 19, 2015, Mr. Roland waived formal indictment and entered guilty pleas to a four count criminal information. Specifically the defendant pled guilty to Count One, Hobbs Act Robbery in violation of Title 18 U.S.C., Sections 1951(a) and 2; Count Two Conspiracy to Commit a Hobbs Act Robbery, in violation of Title 18, U.S.C., Section 1951(a) and 371; Carrying, Using, and Brandishing a Firearm During a Crime of Violence, in violation of Title 18, U.S.C., Section 924(c)(1)(a)(ii); and Count 4 Possession of a Firearm by a Convicted Felon, in violation of Title 18, U.S.C., Section 922(g)(1). According to the PSR, Mr. Roland's adjusted offense level for the grouped Counts 1,2,4 is a level 33, which include adjustments as agreed to in his plea agreement. His applicable guideline range for the grouped counts, accompanied by a

criminal history category of IV, amounts to a range between 135 to 168 months. Moreover, pursuant to his conviction for Count 3, the defendant is also subject to a mandatory minimum term of imprisonment of 7 years, to be served consecutive to any additional period of incarceration imposed. Defendant has reviewed the PSR's guideline calculations and concedes that they are correctly calculated.

## APPLICATION OF U.S.C. §3553(a) Factors

In *Kimbrough v. United States*, 128 S. Ct. 558 (2007), the Supreme Court held that the Sentencing Guidelines are simply an advisory tool to be considered alongside other statutory factors detailed in 18 U.S.C. §3553(a). Courts must consider the recommended guideline range as one of seven co-equal statutory sentencing factors referenced in 18 U.S.C. §3553(a). *United States v. Booker*, 543 U.S. 220, 259-60 (2005). The factors to be considered are: (a) the nature and circumstances of the offense and the history and characteristics of the defendant, (b) the kinds of sentences available, (c) the guideline range, (d) the need to avoid unwarranted sentencing disparities, (e) the need for restitution, and (f) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide for just punishment for the offense, to afford adequate deterrence, to protect the public from further crimes of the defendant and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment. *See* 18 U.S.C. §3553(a). After considering these factors, the Court has discretion to differ with the U.S.S.G.'s custody range, *See Rita v. United States*, 127 S. Ct. 2456 (2007). Furthermore, the sentencing courts must impose the minimum sentence that is sufficient to accomplish the objectives of §3553(a).

A. **The Nature and Circumstances of the Offense**

The nature and circumstances of Mr. Roland's offenses are well documented in the PSR (Presentence Investigation Report Doc. 23 Filed April 30, 2015) and the Government's Position on Sentencing ( Doc. 327 filed May 1, 2015). Mr. Roland writes separately to clarify his involvement with each offense.

Mr. Roland admittedly was a member of the United Bloods Nation, upon being initiated at the age of thirteen in a juvenile detention center. Specifically, he was a member of a local sect by the name of G-Shine. However, Mr. Roland has never been a member of the Nine-Trey Gangsters, to which his co-defendant's and conspirators belong. Mr. Roland describes his affiliation with them as occurring for a period of about a month, but it was never an official affiliation.

On the day May 13, 2013, Mr. Roland, while at a coconspirator's residence became involved in a scheme to rob a local drug dealer of marijuana. Mr. Roland was not an organizer or originator of the idea for the scheme. Nonetheless, Mr. Roland did agree to participate in the conspiracy and ultimately played a material role. Specifically, Mr. Roland did enter into the victim's vehicle under the false pretense of a marijuana purchase and initiate the scheme. While in the vehicle, Mr. Roland did reveal his possession of a firearm to the victim, however he wants to clarify that at no time did he directly point the firearm in their direction nor did he personally make any threats of bodily injury or engage in any physical assaults of the victims. Notwithstanding, Mr. Roland does not dispute that his coconspirators may have done so, and accordingly does not contest any adjustments for such acts.

On the evening of May 13, 2013, again Mr. Roland was present again at a coconspirators house when a second scheme was devised to go the carjacking victim's house. As during the

planning for the previous scheme, Mr. Roland was not the originator of the idea of the contemplated conspiracy. Furthermore, once at the victim's residence, Mr. Roland, with other coconspirators, proceeded upstairs, leaving other coconspirators downstairs with a set of victims. Once in the victim's room upstairs, Mr. Roland did observe a gun in plain view and picked it up prior to handing it to one of his coconspirators. At no time did Mr. Roland physically assault the victim upstairs. Furthermore, Mr. Roland did not engage in, nor was he aware that any coconspirators sexually assaulted the victims downstairs. However, Mr. Roland does concede the adjustments in the guidelines based upon the actions of his coconspirators.

On November 10, 2014, Mr. Roland's cousin came to his residence and recounted a story of him being assaulted by an individual. Mr. Roland, displaying bad judgment and out of haste, then went to the victims house in defense of his cousin. According to Mr. Roland, because of the gang involvement in that particular community, it was normal for him to carry a firearm. Once at the victim's residence, Mr. Roland states that his coconspirators positioned themselves in the front of the house while he was in the back or side of the house out of their view. Mr. Roland states that he did not physically assault any of the victims nor was he aware of his coconspirators doing the same. However Mr. Roland does admit to discharging his firearm in the direction of the residence.

### B. The History and Characteristics of the Defendant

On December 14, 1988, Abdur Rahman Roland was born to Abdur Rahim Saahir and Robin Rene Roland. Mr. Roland is one of five children born to his parents. To say Mr. Roland was born in to tragic circumstances understates the disastrous circumstances of his birth and rearing. Mr. Roland was born to parents dependent on illicit narcotics and engaged in the

distribution of such substances. As a result, Mr. Roland was born addicted to cocaine which resulted in behavioral and cognitive disabilities. These disabilities, likely traceable to the circumstances of his birth, have resulted in several behavioral diagnoses at an early age such as oppositional defiance disorder and weakened inhibitions and impulse control.

Shortly after his birth, both of Mr. Roland's parents were incarcerated for prolonged periods of incarceration due to their convictions for distribution of controlled substances. As a result, Mr. Roland and his siblings were placed intermittently with one of his Aunt's, however this placement could not be sustained, and he and his siblings were also placed in foster care. Once his mother was released at around the age of three (3), his home environment and stability remained about the same if not declined.

Mr. Roland recalls this time period as very troubling times. His mother struggled to support a family on her own while his father remained incarcerated. He remembers never having stable housing throughout this time period. This period was marked by his family going from temporary housing to shelters to even living out of a car. During this period, Mr. Roland recalls a mother who was trying to do her best to support a family, but struggling with drug dependency. Moreover, Mr. Roland readily admits that he as well as his siblings did not make things easy for her. Specifically, Mr. Roland recalls housing difficulties due to the behavior of him and his siblings.

At the age of eleven, Mr. Roland made the first, of his extensively documented contact with the juvenile and criminal justice systems. As he recalls, during this time Mr. Roland acted out in ways as a response to the terrible conditions of his home environment and the absence of a father that he never really new. By the age of thirteen, Mr. Roland had his first instance of serious contact with the juvenile justice system resulting in his first significant period of

incarceration. Unfortunately, during this period of juvenile incarceration, is when Mr. Roland was first exposed to the gang culture.

Mr. Roland describes his first interactions with the gang culture in two ways: one as a means of survival while in a detention setting, and two as a means of fitting in and a brotherhood. While in detention, Mr. Roland learned early on that a means to ensure his safety was joining a gang. In essence, it was an incarcerated person's pragmatic means to an end. While a person looking from the outside in, may view that as incredible, it is necessary to view within the context of how a young child without a stable home or family structure may see things. Furthermore, also owing to his unstable family home, joining a gang, for the first time gave to Mr. Roland a stable and consistent family. By the time of his release from detention, and at the age of thirteen, Mr. Roland was a member of G-Shine, a local sect of the United Bloods Nation.

As regaled in his criminal history, his membership in the gang culture coincides with the rise in criminal justice contacts. Around this same time, his father is released from incarceration and returns to the family. However, it is a family structure that was unknown to Mr. Roland, as he has never had a meaningful relationship with his father due to his prolonged incarceration. Mr. Roland describes his father as someone who attempted to conduct his life in a lawful manner and to try to imbue these newfound values on his children. Unfortunately, it appeared that the dye had already been cast for Mr. Roland and his siblings. Mr. Roland recalls that his brothers and his self were usually involved in constant criminal activities culminating in both of his brothers serving significant periods of imprisonment to date.

During this period, Mr. Roland, as a member of his gang also became deeply involved in the criminal justice system, ultimately resulting in him be tried and sentenced as an adult, where

he would serve his time in an adult penitentiary at the age of sixteen. While serving his sentence, again it was imperative for Mr. Roland to strengthen his gang ties for his survival and brotherhood. In reflection on this period of his life, Mr. Roland recalls being in a gang and participating in anti-social activity as being just as natural as breathing. It was only when Mr. Roland was incarcerated in Baltimore on an unrelated gun charges that for the first time he believes his perspective on his life up to that point began to change.

For the first time, Mr. Roland was in incarcerated outside of his home area in Baltimore. It is during this time period, that Mr. Roland was violently assaulted on more than one occasion resulting in him being stabbed twice along with numerous other assaults. It is during his year and a half spent incarcerated awaiting the dismissal of his charges, that for the first time, Mr. Roland begins to experience the harsh consequences of his choices, and the paucity that continuing in this lifestyle will afford him going forward. Specifically, while in Baltimore, Mr. Roland observed that his being in a gang was an illusion. Prior to this period of time, Mr. Roland viewed gang participation as a means of survival and brotherhood. In Baltimore, he was not afforded such opportunities. In fact, Mr. Roland recalls that his participation in a gang, actually allowed him to be a constant target within the jail. Furthermore, the brotherhood and family that he always longed for, and which drew him into gang participation, no longer existed. Specifically, Mr. Roland always believed, that gang members take care of their own no matter what. However, he came to learn that he was persona-non-grata to those whom he was inculcated to believe would always be there for him.

It is within this context, that Mr. Roland appears before the Court. After the dismissal of his charges in Baltimore, Mr. Roland came into the custody of Prince William County and then ultimately to the custody of the Eastern District of Virginia. While in custody, Mr. Roland has

been subject to isolation, where he is only allowed out of his cell for two hours a day and is allowed only a couple hours a week for physical activity. At first, Mr. Roland described the conditions as unduly grueling, however, after finding a routine, Mr. Roland has attempted to use this time in isolation to reflect on his life, past actions, and how he wants to live his life once he is integrated back into society.

While in Baltimore, Mr. Roland renounced membership in his gang. He did so under a proviso of religion; where a member may disassociate themselves from their gang because of sincere religious engagement. At the time, Mr. Roland re-associated himself with the Islam, the religion of his father. However, after being transferred back to Virginia, Mr. Roland is now a born again Christian. When asked why the conversion from an agnostic, to Muslim, to born again Christian, Mr. Roland simply states that the "Lord saw fit to sit him down", (meaning him being incarcerated) and with having not much to do during the day he began reading the Quran and the Bible. It is through this study, that Mr. Roland has undergone remarkable personal changes.

For the first time, Mr. Roland has begun to think of the future, which is somewhat remarkable for him, because he never really did before. But in thinking of the future, Mr. Roland is not only thinking of himself. Mr. Roland currently is the father of two children who both live in Maryland. It is the future of his children that Mr. Roland now considers. It is his hope that he will be a father and good example for his children, not with what is in his past, but in how he hopes to conduct himself once he has paid his penalty. To this point, Mr. Roland also spends his time writing a memoir that recalls his life to date. It is his hope that his memoir will serve as a cautionary tale for his daughters and other minority youth. It is a story of the pathology of why

youth are drawn to gangs, but also serves as a cautionary tale of where this lifestyle where undoubtedly will end.

### C. The Kinds of Sentences Available

In this case the Court must impose a sentence of imprisonment of at least seven years consecutive to any other sentence imposed. The available sentencing options rests upon whether the Court determines that there is a justification to vary from the applicable sentencing guidelines.

### D. The Need for the Sentence to Reflect the Basic Aims of Sentencing: "just punishment," deterrence, and rehabilitation.

There can be no doubt that the convictions at sentencing are very serious crimes that are inextricably intertwined with acts of violence. And it must be further conceded when looking at the victim impact statement, how the actions of Mr. Roland and his coconspirators have harmed truly innocent persons as a consequence of their actions. While it is absolutely important for the Court to fashion a sentence that is just and deters others from engaging in this type of behavior in the future, the Court must also look to fashion a sentence that is no more than what is sufficient to meet those needs.

Mr. Roland believes the Government's recommendation that the defendant be sentenced to a period of imprisonment of 219 months, which includes a 7 year mandatory minimum, exceeds what is necessary to meet the aims of sentencing. Conversely Mr. Roland would argue that a period of imprisonment of 120 to 144 months would be sufficient but no more than necessary.

In support of his argument, Mr. Roland would like the Court to consider several factors so as to vary from the guidelines. First, Mr. Roland's actual participation in all of the offenses: Mr. Roland's guidelines are concededly elevated by the actions of his coconspirators; specifically, the verbal threats of death, physical assaults, and the heinous sexual assaults during the home invasion robbery. However, as stated above, and as Mr. Roland believes would be corroborated by the Government, he did not engage in any of these actions. Furthermore, once apprehended on November 2014, Mr. Roland was immediately cooperative with the local police in investigating his involvement in the shooting of an occupied dwelling. Finally is important to note that the defendant was incarcerated for a significant period of time in Baltimore City Jail, where he experienced brutal assaults that resulted in physical maladies that persist to the present time. While that case was unrelated to what Mr. Roland is before the Court for, it is important to note that ultimately those charges were dismissed, and Mr. Roland spent a significant period of time incarcerated due to his inability to post a bond.  While it is true that the Bureau of Prisons is the proper entity to credit a prisoner for anytime previously served, and usually that time is reserved for time that is related to the case at bar, District Courts are not prohibited from considering such time  to vary from the applicable guidelines.

WHEREFORE, the defendant, Abdur Rahman Roland, based on the foregoing, and supplemental to be filed with the Court, request this Court to sentence to a period of incarceration that ranges between 120 to 144 months.

By Counsel

Abdur Rahman Roland

HARRIS LAW FIRM

By:_____/s/_____
   Donald E. Harris (VSB74970)
   Harris Law Firm
   2331 Mill Rd. Suite 100.
   Alexandria, VA 22314
   (703)224-8810
   (703)348-3924
   Dharris.esq3@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 5, 2015 I will electronically file the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Zachary Terwilliger
Assistant U.S. Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
(703) 299-3700


By:_____/s/_____
   Donald E. Harris (VSB74970)
   Harris Law Firm
   2331 Mill Rd. Suite 100.
   Alexandria, VA 22314
   (703)224-8810
   (703)348-3924
   Dharris.esq3@gmail.com